Paul H. PENLEY, d/b/a Penley Oil Company, Plaintiff in Error,

v.

GULF INSURANCE COMPANY, a Texas Corporation, and Travelers Indemnity Company, a Connecticut Corporation, Defendants in Error.

No. 40069.

Supreme Court of Oklahoma.

May 3, 1966.

Schwoerke, Schwoerke & Palmer, by Harry R. Palmer, Jr., Oklahoma City, for plaintiff in error.

Monnet, Hayes, Bullis, Grubb & Thompson, by John T. Edwards, Oklahoma City, for defendant in error, Travelers Indemnity Co.

Alex Cheek, B. R. Davis, Cheek, Cheek & Cheek, Oklahoma City, for defendant in error, Gulf Ins. Co.

IRWIN, Justice.

Paul H. Penley, d/b/a Penley Oil Company, referred to as plaintiff, commenced proceedings against Travelers Indemnity Company and Gulf Insurance Company to recover judgment on separate insurance policies issued by the defendant companies, hereinafter referred to respectively as Travelers and Gulf.

Plaintiff alleged two causes of action; one against Travelers, with whom plaintiff had a liability policy covering "Premises-Operations"; and the other cause against Gulf with whom plaintiff had a commercial-use vehicle liability policy. The trial court sustained the separate demurrers of Travelers and Gulf and plaintiff challenges the correctness thereof in this appeal.

Although the liability, if any, of Travelers and/or Gulf, must be based upon the specific provisions of each policy, the same facts form the basis for the alleged liability under both policies. The pertinent facts as alleged by plaintiff may be summarized as follows:

On September 11, 1959, while the two policies were in force and effect, plaintiff received an order for diesel fuel for a motor grader from a customer. Plaintiff's employee made this delivery in a partitioned tank truck, one side containing regular gasoline and one side containing diesel fuel. The employee mistakenly put regular gasoline in the motor grader instead of diesel fuel and the motor grader was damaged when it was run with the gasoline instead of diesel fuel. The customer sued plaintiff for the resulting damages and Travelers

and Gulf both denied their policies covered the operation and refused to pay the damages or defend plaintiff in said action. Plaintiff undertook his own defense and the customer recovered a judgment against him. Plaintiff then commenced this action against Travelers and Gulf for re-imbursement under the terms of the policies.

For clarification, the pertinent provisions of each policy, the contentions relating thereto, and our consideration and determination thereof will be discussed under separate propositions, i. e., Action against Travelers, and Action against Gulf.

## ACTION AGAINST TRAVELERS

■ Plaintiff contends that Travelers' policy covered property damage on *all* his operations and he was insured against damages resulting from operations on his premises as well as damages resulting from delivering and unloading his products off his premises.

Travelers contends its policy specifically excluded accidents involving vehicles, including loading and unloading, occurring away from plaintiff's premises, and the amended petition alleges the accident or occurrence took place away from said premises.

Travelers' policy contained the following provisions:

"Coverage B—Property Damage Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

And under the "Definition of Hazards" we find:

"Division 1. Premises—Operations. The ownership maintenance or use of premises, and all operations."

The exclusions are set out on page 3 of said policy, and are in pertinent part as follows:

"This policy does not apply:

"(a) Under division 1 of the Definition of Hazards, and under Coverage C, to the ownership, maintenance, operation, use, loading or unloading of * * * automobiles if the accident occurs away from such premises or the ways immediately adjoining, * * *."

The premises covered by Travelers' policy is specifically designated as 2627 W. Reno, Oklahoma City, Oklahoma. Plaintiff alleged that the negligent act of placing regular gasoline in the motor grader instead of filling the motor grader with diesel fuel, occurred at Northwest Thirty-Fifth and Ann Arbor Streets.

In the case of Citizens Casualty Co. of N. Y. v. L. C. Jones Trucking Co., 238 F. 2d 369, Tenth Circuit (Okla.), the court had the occasion to consider two insurance policies. The National policy covered:

"The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

It also contained an exclusion provision which stated the policy does not apply to:

"* * * (3) automobiles or the loading or unloading thereof except upon premises owned, rented or controlled by the named insured and ways immediately adjoining within the territory * * *."

The Circuit court affirmed the trial court and held that:

"The accident occurred during operation of the truck, on premises not owned, rented or controlled by Jones and was not within the coverage of the National policy."

Plaintiff alleged that the negligent acts which caused the resulting damages occurred away from the premises specifically designated in Travelers' policy. Since such policy did not apply to the loading or unloading of the tank car, except upon said designated premises, the plaintiff failed to bring himself within the terms and coverage of Travelers' policy. We therefore affirm

the trial court in sustaining Travelers' demurrer to plaintiff's amended petition.

### ACTION AGAINST GULF

Plaintiff contends that his employee's negligent acts, though unintentional, caused and precipitated the damage to the diesel motor and such was an accident; and that he had property damage coverage which included loading and unloading under the ownership, maintenance or use proviso of Gulf's policy which was written on a "commercial" basis.

Gulf contends that the alleged negligent acts of plaintiff's employee in placing gasoline instead of diesel fuel in the motor grader, did not result in damages "caused by accident"; and that the resulting damages did not arise out of the primary "use" of plaintiff's insured tank truck during the unloading process as the "loading and unloading" provision is construed in a vehicle liability policy.

Under the terms of Gulf's policy, Gulf agreed to pay all sums which the insured became legally obligated to pay as damages "caused by accident and arising out of the ownership, maintenance or use of the automobile". Plaintiff's truck was written or covered for "business, pleasure and commercial use". The term "commercial use" was defined as use principally in the business or occupation of the insured. The policy reflects that the business of insured was "Distributor Continental Oil Company".

■ In construing an insurance contract, its terms and words, if unambiguous, must be accepted in their plain, ordinary and popular sense. See United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754.

In Rothman v. Metropolitan Casualty Insurance Company, 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169, the court had occasion to consider provisions similar to those in the Gulf policy as to whether the resulting injuries were "caused by accident". In that case the court said:

"* * * It is well settled from the standpoint of public policy that the act of intentionally inflicting an injury cannot be covered by insurance in anywise protecting the person who inflicts such injury. * * * In our opinion, only those acts which are not motivated by an intent and purpose to injure are to be regarded as covered by the terms of the policy. * * *.

"Let us repeat: The word 'negligence' is not used anywhere in the insurance contract. Hence, there is no such limitation implied in the coverage of the policy, and if the injury was not intentionally caused, then it was accidentally suffered. In this case there was no finding, nor is there any claim, of intentional injury. As well stated in the case of Sontag v. Galer, 279 Mass. 309, 181 N.E. 182, 183, 'It is the state of the "will of the person by whose agency it (the injury) was caused" rather than that of the injured person which determines whether an injury was accidental.' * * *."

■■ Gulf argues that the act of plaintiff's employee was voluntary and the damage was the natural result of the act; that even though the result may have been unforeseen and unintended, there is no coverage for damage caused by the mistake or error of the employee.

In Minkov v. Reliance Ins. Co. of Philadelphia, 54 N.J.Super. 509, 149 A.2d 260, the insurance company prevailed in the trial court on the ground that the alleged damage to a wall was foreseeable by plaintiff and therefore was "not caused by accident". The insurance company argued that the damage was not unusual—not accidental, because foreseeable. In rejecting this contention the court said:

"* * * Simply because the damage resulted from negligence, a concept which carries with it the element of foreseeability, does not deprive the occurrence of its accidental nature. Although an intentional or willful tort would negative the existence of an accident an act attributable solely to negligence may be an

accident. It cannot seriously be contended in the present case that the damage was intentional on the part of plaintiff's employees. To give the word 'accident' the meaning for which defendant argues would manifestly defeat the purpose of the policy, which is to protect against liability in circumstances like those here present."

See also the case of Cross v. Zurich General Accident & Liability Insurance Co., 7 Cir., 184 F.2d 609. Therein the insurance company prevailed in the trial court by asserting that the plaintiff's use of acid was deliberate and intentional, therefore, the result of its use was not unforeseen, unexpected or unusual. The United States Court of Appeals in reversing the judgment of the trial court, in effect, said that plaintiff may have been negligent but his acts negatives any idea that he intended to cause any damage, and lacking such intent, the damage was accidental, even though caused by negligence.

In Haynes v. American Casualty Company, 228 Md. 394, 179 A.2d 900, the trial court found that since the employees of the plaintiff intended to cut the trees on the other person's property, which they did cut, the result was neither unusual nor unexpected and therefore did not come within the meaning of the clause "caused by accident". Therein the insurance company asserted the same argument as Gulf asserts here. The Maryland court, in rejecting this argument and reversing the case for the insured, stated:

"* * * To argue that, because the means employed were not accidental, the resulting damage cannot be construed as being 'caused by reasonably accident', though the damage was in no way anticipated, is to rely upon a fine distinction which would never occur to, or be understood by, the average policy holder."

In the Haynes case the court stated that much has been written on the question whether or not any distinction should be recognized between "accidental means" and "accidental results"; that there has been a general tendency among a growing number of courts to refuse to apply such a distinction and holding that said terms are synonymous. For a review of decisions and discussion of the point see 166 A.L.R. 469, wherein the case of Provident Life & Accident Ins. Co. v. Green, 172 Okl. 591, 46 P.2d 372, is cited in support of the above view.

In United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754, this Court had the occasion to consider the question of what is an accident. Therein we stated:

"* * * One thing at least, is well settled, the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally. * * *."

We also stated that:

"* * * The distinguishing characteristic feature of an accident is the distinctive event or determinable, unexpected happening, occurring during the time in question, the date of which can be fixed with certainty. Such incident or occurrence must have arisen from an event capable of being identified with respect to time, place and circumstances. * *."

The petition readily admits that the acts of plaintiff's employee were negligent and that he intentionally delivered fuel to and placed same in the grader. However, there is no allegation nor is there any contention by either party that this employee intentionally or deliberately placed regular gas in this diesel engine instead of diesel fuel, nor that this employee intentionally or deliberately intended to damage the grader. As stated in the Rothman case, supra, public policy prevents insurance covering an intentional act to injure, but such is not the case before us. Here we merely have an act of negligence completely void of any intent to inflict injury or damage upon this property.

We are of the opinion and hold that the alleged acts in the instant action which

caused the resulting damages were "caused by accident".

We will now consider Gulf's contention that the resulting damages did not arise out of the primary "use" of the tank truck during the unloading process as the "loading and unloading" provision is construed in a vehicle liability policy.

The Gulf policy insured plaintiff as a "Distributor Continental Oil Company". Plaintiff's automobiles were covered for "pleasure, business and commercial use". Under the "Insuring Agreements", Coverage B—Property Damage Liability, we find Gulf agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintanance or use of the automobile."

Under "Conditions" paragraph #25 "Purposes of Use" we find the following:

"* * * (b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in the declarations, including occasional use for personal, pleasure, family and other business purposes.

"(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

The so-called "loading and unloading" clause in insurance contracts has been frequently considered and construed by the courts. Most authorities agree that the phrase "including loading and unloading" is a phrase of extension; that it expands the expression "use" of the truck beyond its connotation otherwise, so as to bring within the policy some acts in which the truck itself does not play any part.

The courts have generally applied two rules or doctrines when considering situations covered by the "loading and unload-ing" clause. See Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716; and 160 A.L.R. 1259–1277. One is the "coming to rest" doctrine. This view places a narrow construction on said clause and does not hold the insurer liable beyond the point where the goods have been taken off the automobile and have actually come to rest, i. e., when the automobile itself is no longer connected with the process of unloading, and when the articles have started on their course to be delivered by other power and forces independent of the automobile.

The other view is the so-called "complete operation" doctrine, which holds that "loading and unloading" includes the entire process involved in the movement of the articles from the place where insured's employees find the articles, which are to be moved by truck to the place where the employees of insured turn them over to the party to whom they are to make delivery.

The parties have not cited, nor have we found, a case that discloses which doctrine this state has adopted or followed. A majority of the states follow the "complete operation" theory and we believe said rule should be adopted by this Court.

Gulf asserts two contentions under this proposition. The "use" of the truck was in no way causally connected with the act causing damage, i. e., the injury was caused by an act of the employee unassociated with the primary use of the truck, which is transporting the fuel. Next Gulf contends that the delivery of the gasoline was complete when the fuel came to rest in the grader tank and "unloading" had been completed when the accident occurred.

In the case of Schmidt v. Utilities Insurance Company, 353 Mo. 213, 182 S.W. 2d 181, 154 A.L.R. 1088, the appellant insurance company contended that the efficient, direct and proximate cause of the injury was the separate independent and intervening negligent acts of the truck drivers in placing blocks on the sidewalk and that there was no causal relation between the

injury and the use of the trucks. In rejecting this theory the court stated:

"* * * The policy, by its terms, does not require a finding that the injury to respondent was directly and proximately caused by the use of the automobile, or caused by the automobile itself, or that the injury occurred while the automobile was in motion or operation. The words of the policy are 'caused by accident and arising out of the * * * use of the automobile.' The words 'arising out of * * * use' are very broad, general and comprehensive terms. The insurer made no attempt to limit the plain, usual and ordinary meaning of the terms used. We find nothing in the policy requiring that the ownership, maintenance, or use of the automobile shall be the direct and 'efficient cause of the injuries sustained,' as appellant contends. * * *."

The case of Raffel v. Travelers Indemnity Co., 106 A.2d 716, also involved an automobile liability policy which provided that "loading and unloading" was covered by said policy. A roll of linoleum was delivered to a customer's home and placed upright on the porch. Later it fell on a child resulting in injuries. The court considered the question of whether the accident occurred while "unloading". It discussed the two aforementioned doctrines and stated that if the driver was negligent in leaving it where it could and did cause injury, the negligent act was a part of the operation of unloading the truck and had a direct causal relation with the truck and the unloading operation.

See also the case of American Automobile Ins. Co. v. Master Bldg. Supply & Lumber Co., 179 F.Supp. 699 (Md.1959), which considered an automobile liability policy similar to Gulfs. Four hours after the insured delivered some sheetrock and placed same in the customer's basement, it fell resulting in injuries to the customer. The court considered the "complete operations" rule and held that the company which

carried the automobile liability policy was required to defend the state court action.

Plaintiff's tank truck was used to transport the fuel to the customer's grader where the fuel was delivered or transferred from said truck and deposited in the fuel tank of the grader. It was during this operation that the alleged negligent act of plaintiff's employee occurred.

The negligent act of this employee, i. e., placing regular gasoline instead of diesel fuel in the grader tank, occurred during all the times when the fuel was being delivered from the truck into the grader tank. The primary function of this truck was to transport fuel to the grader, deliver same from the truck and place it in the grader tank. Merely because the truck and driver were not on the scene when the grader motor was started does not remove the negligent act from the "unloading" operation. As stated in the Raffel case, supra, if the plaintiff's driver was negligent when he unloaded and deposited this particular fuel where it could and did cause injury or damage, then the negligent act was part of the operation of unloading the truck.

In Red Ball Motor Freight v. Employers Mut. Liab. Ins. Co., 5 Cir., 189 F.2d 374, the court had the occasion to consider an automobile liability policy which contained the clause "caused by accident and arising out of the ownership, maintenance, or use of the automobile". The employer maintained two storage tanks, one underground and the other overground, which held gasoline to supply his fleet of trucks. The truck driver discovered the underground tank was empty so he opened a valve between the two tanks in order for gasoline to flow to the lower tank and through the pump into his truck. After his fuel tank was full he closed the valve between the two storage tanks but it did not fully close. Later the lower tank overflowed and the gasoline flowed into the gutters which was ignited resulting in a destructive explosion. At the time of the explosion the truck and driver were some

**312**

forty or fifty miles out of town. The court reversed the trial court and held that the company was liable on its automobile policy.

 We cannot accept Gulf's contentions. We have found no language in said policy which would cause us to place an interpretation on the terms of this policy other than the usual and ordinary meaning. The contentions of Gulf would result in a construction which would limit the policy, contrary to its broad terms, and would not include acts of the truck driver performed in connection with the duties or services, in this case filling the grader tank, which would certainly be incident to and arising out of the use of the truck. The cause of the regular gasoline being in the grader fuel tank, which in unbroken sequence proximately caused the damage to the grader's motor, was the negligent act of the driver of the tank truck. There was a direct and proximate causal connection between the act of causing the regular gasoline to be in the grader's fuel tank and the resulting damages that this plaintiff was required to pay.

We believe that the act of placing fuel in the grader's fuel tank was an incident of the commercial use of the truck. Furthermore, we hold that the alleged negligent act and resulting damage occurred during the "unloading" of the fuel from the tank truck and within the provisions of the Gulf policy.

 The case is presented on demurrers to the amended petition and we have consistently held that a demurrer admits the truth of all facts well pleaded, together with all inferences which may be reasonably drawn therefrom; and that the petition is liberally construed in favor of plaintiff. Nutt v. Carson, Okl., 340 P.2d 260.

We have carefully considered the cases submitted by counsel and they may be distinguished on the facts of the particular case or on the theory upon which the particular court considered such facts. We believe the plaintiff's amended petition brings same within the provisions of the Gulf Insurance policy and we so hold. The order of the trial court is affirmed as to defendant Travelers and the trial court is directed to enter judgment thereon, and reversed as to defendant Gulf.

Affirmed in part; reversed in part.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and LAVENDER, JJ., concur.