843 P.2d 154

**MUTUAL OF ENUMCLAW, Plaintiff–Appellant–Cross Respondent,**

**v.**

**Shirley Mae WILCOX, Defendant–Respondent,**

**and**

**JOHN DOES A THROUGH R, Intervenors–Respondents–Cross Appellants.**

**No. 19403.**

Supreme Court of Idaho, Idaho Falls, September 1992 Term.

Dec. 3, 1992.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for plaintiff-appellant. J. Walter Sinclair argued.

Wright Law Offices, P.A., Idaho Falls, for defendant-respondent Wilcox. Jon J. Shindurling argued.

Weinpel, Woolf & Combo, Idaho Falls, for intervenors-respondents Does. William R. Combo argued.

McDEVITT, Justice.

### BACKGROUND AND PRIOR PROCEEDINGS

A. *The Underlying Action.*

On August 18, 1989, twelve anonymous plaintiffs filed suit against Shirley Mae Wilcox ("Wilcox"), her ex-husband, the state of Idaho, and ten unnamed employees of the state of Idaho. In the complaint,

plaintiffs alleged that the Wilcoxes were employed by the state of Idaho at the Child Development Center and provided respite or foster care through the state of Idaho. In addition, plaintiffs alleged that "the minor Plaintiffs suffered incidences of repeated sexual exploitation, sexual molestation, and sexual abuse between May, 1980, and May, 1987, at the said Child Development Center and at the home of Defendants Jay Wilcox and Shirley Wilcox...." Further, plaintiffs alleged that "the adult Plaintiffs were never informed by representatives of the Defendant, State of Idaho, nor by its Department of Health & Welfare, nor by any of its employees at its Child Development Center, of the sexual exploitation, sexual molestation, and sexual abuse of the minor Plaintiffs."

As to Wilcox, plaintiffs alleged that she "was negligent in one or more of the following:"

a. In failing to report to the law enforcement authorities, the sexual abuse, exploitation and molestation which occurred at her home by Defendant, Jay Wilcox, which duty to report is set out in Idaho Code § 16–1619, Idaho Code;

b. In failing to report to her husband's employer the tendencies and sexual molestation of other children by her husband, Defendant Jay Wilcox.

c. In failing to warn or provide adequate safety for the minor Plaintiffs herein, who were brought to her home by her husband, Defendant Jay Wilcox, knowing the sexual propensities of her husband, Defendant Jay Wilcox.

Plaintiffs prayed for their economic and non-economic losses against Wilcox, reasonable attorney fees, and costs and disbursements.

## B. *The Declaratory Action.*

On June 25, 1990, Enumclaw filed a complaint for declaratory judgment. In the complaint, Enumclaw alleged that it was not liable under the policy of insurance issued to Wilcox with respect to the claims made against her by the twelve anonymous plaintiffs. Specifically, Enumclaw stated that it denied liability because "it appears that the basis of the claims against Shirley Wilcox, are not an accident or 'occurrence' as set out in the terms of the insurance policy...." Enumclaw attached an insurance policy to its complaint, which it alleged was "in effect during all times relevant to the matters contained in this complaint."

On July 9, 1990, Enumclaw filed an amended complaint for declaratory judgment. In the amended complaint, Enumclaw added that the insurance policy did not provide coverage pursuant to an exclusion relating to intentional conduct, because Wilcox's ex-husband's acts were intentional and Wilcox's failure to report was also intentional.

On February 14, 1991, Wilcox filed an answer to the first amended complaint for declaratory judgment. In her answer, Wilcox alleged that the complaint failed to state a claim upon which relief could be granted, that there was not an actual controversy between the parties, that the exclusions cited by Enumclaw were irrelevant, that Enumclaw is estopped from withdrawing because she relied on a letter from Enumclaw which stated that Enumclaw would defend her, and that Enumclaw has waived its right to withdraw defense or coverage.

On March 6, 1991, Enumclaw filed a motion for summary judgment. Along with the motion for summary judgment, Mark Canterbury, a Personal Lines Senior Underwriter who has access to all insurance policies issued by Enumclaw, filed an affidavit which stated that an attached homeowner's insurance policy (the "Enumclaw Policy") was in effect between Enumclaw and Wilcox from February 1, 1971 to March 7, 1985. In addition, J. Walter Sinclair, an attorney for Enumclaw, filed an affidavit stating that he attended the January 22, 1991 deposition of Wilcox. Sinclair attached "relevant excerpts" of the transcript of the deposition to his affidavit. Among other things, the attached excerpts revealed that Wilcox stated that her ex-husband told her in July of 1978 "[t]hat he had touched him inappropriately one time." Further, after telling Wilcox, he told the

Mormon bishop. In addition, after being excommunicated from the Mormon church, the Wilcoxes provided respite care to children in their home.

On March 7, 1991, the intervenors[1] filed an answer to plaintiff's amended complaint. In addition to the defenses raised by Wilcox, the intervenors added that Enumclaw's claim was barred by the statute of limitations and laches and that the insurance policy should be construed against Enumclaw.

On April 2, 1991, Roger B. Wright, an attorney for Wilcox, filed an affidavit in which he stated that he attended the January 22, 1991, deposition of Wilcox. Wright attached "relevant excerpts" of the transcript of the deposition to his affidavit. Among other things, the excerpts revealed that Wilcox did not believe her ex-husband was continuing to engage in inappropriate touching with her son after her ex-husband had been excommunicated from the Mormon church.

On April 10, 1991, Wilcox filed an affidavit in which she stated that the insurance policies attached to the initial complaint and Mark Canterbury's affidavit did not appear to be the same as the policy that she had in her possession. Wilcox attached a copy of her original insurance policy (the "Wilcox Policy"), the "only policy [she knew] to have been in effect during the period relevant to Plaintiff's complaint."

On April 11, 1991, the intervenors filed a motion for summary judgment. Wilcox joined the intervenors' motion on April 12, 1991.

On May 7, 1991, Joyce Grager filed an affidavit. In her affidavit, she stated that she has been employed by Enumclaw for the past fifteen years and was in charge of a program at Enumclaw in which the language of homeowners' insurance policies was simplified in 1983. Further, she stated that when each homeowner's policy came up for renewal on or after November 1, 1983, the new "simplified" policies were automatically sent to the insured.

Argument on the cross-motions for summary judgment was heard on May 8, 1991. The district court issued its memorandum decision on June 5, 1991, its order denying Enumclaw's motion and granting the Wilcox/intervenor motion for summary judgment on June 9, 1991, and summary judgment dated June 10, 1991.

In its memorandum decision, the district court stated that "the first question to be resolved is which of the two Enumclaw homeowner's policies ... were in effect at the times in question." The court noted that "for purposes of Enumclaw's motion for summary judgment, Enumclaw admits that [Wilcox's] policy is the applicable policy for the period of May, 1980 through May, 1987. Based upon that admission, the court will rule upon Enumclaw's motion for summary judgment based upon the provisions and language contained in [the Wilcox] [P]olicy." However, since Enumclaw did not concede the applicability of the Wilcox Policy with respect to the Wilcox/intervenor motion for summary judgment, the district court stated that "there is a genuine issue of material fact as to which policy is applicable from and after November, 1983." Since the court found that there was a factual dispute, it reasoned that it would have to deny the Wilcox/intervenor motion unless there was no "substantial and material difference" between the Enumclaw Policy and the Wilcox Policy.

The district court first addressed Enumclaw's motion for summary judgment. As to the contention that Wilcox's conduct did not constitute an "occurrence," which the Wilcox Policy defines as "an accident ...," the court noted that the Wilcox Policy did not define the term "accident;" and, thus, the term is "unclear, and therefore ambiguous from the language of the policy itself...." Since an ambiguity in an insurance contract must be resolved in favor of the insured, the district court reasoned, the court adopted the broad definition of "accident" given in *Penley v. Gulf Ins. Co.*, 414 P.2d 305, 308 (Okla.1966), which the district

---

**1.** Intervenor's motion to intervene was noted in the court minutes of March 28, 1991. In the court minutes, it is revealed that each party presented argument on the motion. An order dated April 9, 1991, was entered granting the motion to intervene.

court stated as: "an injury is the result of an 'accident' if it is not caused by intentional conduct."

The second question was whether Wilcox's "alleged misconduct in the underlying case was intentional. If it was, then [the Wilcox] [P]olicy provides no liability coverage. On the other hand, if it was not, then coverage exists." In this regard, the district court specifically distinguished between Wilcox's conduct and her ex-husband's conduct—"it is *her* acts or omissions, and not those of her husband, which must be scrutinized in order to determine whether they constitute an 'accident' within the meaning of [the Wilcox] [P]olicy." (Emphasis added.) The court stated that "[w]hile it may be that [Wilcox] intentionally decided not to report or warn of her husband's misconduct, that decision constituted nothing more than a mistake or an error in judgment. There is no evidence whatsoever to suggest that she intentionally harmed anyone." Thus, the district court found that Wilcox's conduct constituted an "occurrence" within the meaning of the Wilcox Policy.

The district court then addressed the policy exclusions relating to the wilful violation of a law or ordinance by the insured and expected or intended injury. As to the wilful violation of a law exclusion, the court found that since this exclusion was not in the Wilcox Policy, but only in the Enumclaw Policy, it would not be considered. As to the expected or intended injury exclusion, the court found that there was no evidence that Wilcox expected or intended to injure anyone. In addition, the court stated that "[w]hile it may be argued that [Wilcox's] failure to report or warn of her husband's sexual misconduct could foreseeably result in injury to the minor plaintiffs in the underlying action, in this court's view foreseeability does not amount to an expectation of or an intent to cause injury," citing *Farmers Ins. Group v. Sessions*, 100 Idaho 914, 607 P.2d 422 (1980).

The court then reviewed the business pursuits exclusion of the Wilcox Policy. In this regard, the court followed the rationale of *Farmers Ins. Exchange v. Sipple*, 255 N.W.2d 373 (Minn.1977), and found

that "the acts of molesting the children were not acts that contributed, or furthered the interest of, the Wilcox business." Thus, the court ruled that the business pursuits exclusion does not bar coverage for Wilcox as to those children who may have been molested at the Child Development Center by her ex-husband since Wilcox was not engaged in any business pursuit.

As to the children who may have been molested at the Wilcox home while Wilcox and her ex-husband were providing respite or foster care for them, the district court turned to the definition of "business pursuits" given in *Black v. Fireman's Fund Ins. Co.*, 115 Idaho 449, 767 P.2d 824 (Ct. App.1989). With this definition in mind, the court concluded that Wilcox's "activities in providing respite or foster care did not constitute a business." Particularly, the court found that Wilcox and her ex-husband "provided respite and foster care primarily for humanitarian reasons, and not for commercialism or profit," that the activities were "performed intermittently and not on a regular basis," and that "any compensation received for such care was equalled or exceeded by the expenses involved."

Initially, the district court concluded that the provision of the Wilcox Policy regarding the scope of coverage (the "occurrence" and "accident" provision) was "substantially the same" as the provision in the Enumclaw Policy. The court then found that the exclusion regarding a wilful violation of the law did not apply to Wilcox's conduct because only her ex-husband violated the law and because Enumclaw had not alleged that her ex-husband's conduct is imputed to Wilcox. Finally, the district court found that the business pursuits exclusion of the Wilcox Policy was substantially the same as that in the Enumclaw Policy, and, thus, inapplicable. The court granted the Wilcox/intervenor motion for summary judgment.

Enumclaw filed a notice of appeal on June 26, 1991. It appealed from "(1) an order on Motion for Summary Judgment dated June 9, 1991; (2) a Motion to Intervene dated April 9, 1991; and a subsequent order relating to the award of attorney

fees and costs...." The notice was filed pursuant to I.A.R. 11(a)(1).

By order dated July 9, 1991, the district court awarded Wilcox $33.00 in costs as a matter of right and $5,794.25 in attorney fees, but refused to award discretionary costs. Further, the court awarded the intervenors $359.90 in costs as a matter of right, but refused to award discretionary costs and attorney fees because it found the intervenors to not be parties entitled to fees under I.C. § 41–1839.

The intervenors filed a notice of cross-appeal on July 12, 1991. They appealed from an "Order denying Costs and Attorney[] Fees, entered in the above entitled action on the 12th day of July, 1991...." The notice was filed pursuant to I.A.R. 11(a).[2]

## ANALYSIS

The issues raised on this appeal are:

I. Was the district court correct in ruling that the conduct of Wilcox was an "occurrence" under the terms of the Enumclaw Policy and the Wilcox Policy?

II. Was the district court correct in ruling that the insurance policy exclusions did not bar coverage for the conduct of Wilcox?

III. Was the district court correct in ruling that if there was no substantial and material difference between the Wilcox Policy and the Enumclaw Policy, summary judgment could still be given on the Wilcox/intervenors motion?

IV. Was the district court correct in awarding attorney fees and costs to Wilcox?

V. Was the district court correct in ruling that the intervenors were not parties entitled to attorney fees pursuant to I.C. § 41–1839?

## I.

Was The District Court Correct In Ruling That The Conduct Of Wilcox Was An "Occurrence" Under The Terms Of The Enumclaw Policy And The Wilcox Policy?

The Enumclaw Policy defines "occurrence" as "an accident, including continu-ous or repeated exposure to substantially similar conditions." The Wilcox Policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." The district court found the term "accident" to be ambiguous, and resolved the ambiguity by adopting a definition of "accident" found in an Oklahoma case, *Penley v. Gulf Ins. Co.*, 414 P.2d 305 (Okla.1966). The district court stated the definition given in *Penley* as: "an injury is the result of an 'accident' if it is not caused by intentional conduct." It adopted this definition of "accident" from *Penley* because it reasoned that rules of construction required it to give the word a broad definition since the policies left it undefined. We disagree with the reasoning of the district court as well as its adopted definition of "accident."

In *Stein–McMurray Ins. v. Highlands Ins. Co.*, 95 Idaho 818, 820, 520 P.2d 865, 867 (1974), this Court stated:

> [W]here a word or phrase used in an insurance contract has a settled legal meaning or interpretation, that meaning or interpretation must be given even though other interpretations are possible.

In other words, not every word and phrase in an insurance contract needs to be defined in the contract. Rather, insurance policies may contain words and phrases that simply have settled legal meanings or interpretations, and, thus, would not be ambiguous merely because the policy does not provide a definition.

In this case, both parties have cited a number of definitions for the word "accident," including *Couch on Insurance, Webster's New World Dictionary, Black's Law Dictionary,* and cases from other jurisdictions. All of these definitions, with the exception of the *Penley* definition, are not mutually exclusive. In fact, the definitions cited by the parties say essentially the same thing.

**Accident.**

·    ·    ·    ·    ·

**2.** Idaho Appellate Rule 15 provides for cross- appeals.

*Insurance contract.* An accident within accident insurance policies is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens. A more comprehensive term than "negligence," and in its common signification the word means an unexpected happening without intention or design.

Black's Law Dictionary 14 (5th ed. 1979).

**ac · ci · dent** (ak ´si dent), *n.* 1. an undesirable or unfortunate happening, unintentionally caused and usually resulting in harm, injury, damage, or loss; casualty; mishap: automobile accidents. 2. any event that happens unexpectedly, without a deliberate plan or cause....

Webster's Encyclopedic Unabridged Dictionary 9 (1989).

We hold that the word "accident," as used in an insurance policy such as the two policies in this case, and not otherwise defined in the policy, has a settled legal meaning or interpretation.

With this definition in mind, we turn to the alleged acts of Wilcox. It is *her conduct* that we must look to, and not to her ex-husband's conduct, because she is the only one whose acts could be covered by the policy in question. The twelve anonymous plaintiffs in the underlying action have alleged that Wilcox was negligent in failing to report or warn the proper authorities of the child molestation perpetrated upon minors by her ex-husband. Her alleged conduct is the failing to report or warn, while her ex-husband's conduct is the child molestation, which is intentional conduct and, thus, clearly not an "occurrence."

Looking to Wilcox's alleged conduct, we find that it is not an "occurrence" under the policies because it was not the conduct which caused injury. The injury suffered by the minors is child molestation. While the acts or failure to act by Wilcox may have created or contributed to the environment which permitted her ex-husband's conduct, Wilcox did not commit the acts complained of by the twelve anonymous plaintiffs. Therefore, the Enumclaw Policy and the Wilcox Policy do not provide coverage for Wilcox.

Because we hold that the policy in question does not afford coverage for Wilcox, it is unnecessary to consider the policy exclusions, the issue relating to whether the intervenors were parties entitled to attorney fees pursuant to I.C. § 41–1839, and whether the district court could proceed on the Wilcox/intervenor motion for summary judgment if it found no "substantial and material difference" between the insurance policies. Further, the district court's award of attorney fees is vacated.

The decision of the district court is reversed.

No costs or fees on appeal.

BAKES, C.J., and JOHNSON, BISTLINE and TROUT, JJ., concur.