878 P.2d 750

**CITY OF BOISE, an Idaho municipal corporation, Dirk Kempthorne and Ken Morss, Plaintiffs–Appellants,**

v.

**PLANET INSURANCE COMPANY, a Wisconsin corporation, Defendant– Respondent.**

No. 20788.

Supreme Court of Idaho, Boise, March 1994 Term.

June 3, 1994.

Rehearing Denied Aug. 25, 1994.

Imhoff & Lynch, Boise, for appellants. Michael W. Moore, argued.

Cantrill, Skinner, Sullivan & King, Boise, for respondent. Robert D. Lewis, argued.

JOHNSON, Justice.

This is a municipal liability insurance case. We conclude that the insurance policy obligates the insurance company to pay damages awarded against the insured city, its mayor, and its fire chief, less the amount of self-insured retention.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

The City of Boise (the city) purchased a comprehensive insurance policy (the policy) from Reliance Insurance Company. The pol-

icy was underwritten by Planet Insurance Company of Wisconsin (the company), and included comprehensive general liability coverage (the liability coverage). The liability coverage provided "excess municipal liability insurance," with a liability limit of $900,000 per occurrence and with a $100,000 self-insured "retention" per occurrence.

The following portions of the policy are pertinent to this case:

The Company will pay on behalf of the **Insured** for the **ultimate net loss** in excess of the **retention** which the **Insured** shall become legally obligated to pay by reason of liability imposed by law or liability of others assumed by contract, insofar as the **Named Insured** may legally do so, for damages because of

Coverage A **Personal Injury**

Coverage B **Property Damage**

Coverage C **Errors and Omissions Liability**

and caused by an **occurrence** during the policy period anywhere in the world.

. . . .

This policy does not apply:

. . . .

except with respect to liability of others assumed by the **Insured** under contract, to personal injury to or sickness, disease or death of any employee of the **Insured** arising out of and in the course of his employment by the **Insured;**

. . . .

**Errors and omissions** means any actual misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by an **Insured** in their capacity as such.

. . . .

**Insured** means the **Named Insured** [the city] and the following:

1.  past or present employees, servants or elected . . . officials of the **Named Insured** . . . when acting in their capacity as such employees or elected or appointed officials;

. . . .

**Occurrence** means an accident, event or error or omission during the policy period, including injurious exposure to conditions, which results in **personal injury, property damage,** or **errors and omissions** neither expected nor intended from the standpoint of the **Insured.**

**Personal injury** includes

1.  Bodily injury, sickness, disease, disability, shock, fright; mental anguish, and mental injury, including death at any time resulting therefrom;

2.  False arrest, false imprisonment, wrongful entry, wrongful eviction, wrongful detention, malicious prosecution and humiliation;

3.  The publication or utterance of a libel or slander or of other defamatory or derogatory material, or a publication or utterance in violation of rights of privacy;

4.  Piracy, unfair competition or idea misappropriation under an implied contract or infringement of copyright, title or slogan arising out of the **Named Insured's** advertising activities;

5.  Racial, religious, sex, or age discrimination unless insurance thereof is prohibited by law; and

6.  Assault and battery not committed by or at the direction of the **Insured** unless committed for the purpose of preventing or eliminating danger to person or property.

. . . .

**Retention** means either the self insured retention of the **Insured** or the underlying insurance. . . . The self insured retention . . . includes **defense costs.**

. . . .

(Bold face type in the policy.)

Patrick Dunn filed a lawsuit (the Dunn litigation) against the city, the city's mayor (the mayor), and the city's fire chief (the fire chief). Dunn alleged that the fire chief had wrongfully demoted him from his position as deputy chief of operations in the city's fire department. Dunn also alleged that his efforts to communicate his concerns about management problems caused by the fire

chief included constitutionally protected speech and expression and that his demotion and the failure of the mayor and the city to reinstate him was in retaliation for his efforts to communicate his concerns.

The city informed the company of the lawsuit and proceeded to conduct its own defense. During the course of the Dunn litigation, all of Dunn's claims were dismissed except one alleging violation of constitutionally protected speech. At the conclusion of the trial in the Dunn litigation, the trial court submitted this issue to the jury. The jury returned a special verdict finding that Dunn was involuntarily demoted in retaliation for his exercise of protected free speech. The jury awarded Dunn damages of $215,533 for loss of wages and benefits, and $46,608 for emotional distress. The trial court awarded Dunn attorney fees and costs, and entered a judgment (the judgment) for $288,419.52 imposing joint and several liability on the city, as well as the mayor and the fire chief in their official capacities.

Following the verdict in the Dunn litigation, the company informed the city that the policy did not provide coverage for the judgment. In the case now before us, the city, the mayor, and the fire chief sought a declaratory judgment declaring that the policy afforded coverage for the damages awarded in the judgment in the Dunn litigation. They also requested attorney fees pursuant to I.C. § 41–1839.

The company contended that the policy did not provide coverage for the damages awarded to Dunn and counterclaimed for a declaratory judgment in its favor. In reply to the company's counterclaim, the city, the mayor, and the fire chief asserted that the company was estopped from denying coverage for the Dunn litigation.

All the parties requested summary judgment. The trial court granted summary judgment in favor of the company. The trial court declared that the policy does not provide coverage for Dunn's wage loss award for the reason that there was no "occurrence" because the fire chief intentionally demoted Dunn, and because lower wages were an expected outcome of the demotion. The trial court also ruled that the policy does not

provide coverage for Dunn's emotional distress award because the policy excludes coverage for personal injury to an employee arising out of the course of employment. The trial court ruled that while the company did not issue a reservation of rights letter during the pendency of the Dunn litigation, the company had no duty to defend or pay defense costs until the $100,000 retention was exhausted. This did not occur, the trial court said, until the judgment was paid. The trial court also concluded that the company did not control the city's defense of the Dunn litigation, and, therefore, had no duty to issue a reservation of rights letter or otherwise present a position on coverage.

The city, the mayor, and the fire chief appealed.

## II.

## THE POLICY DOES NOT EXCLUDE COVERAGE FOR DUNN'S DAMAGES FOR EMOTIONAL DISTRESS.

The city, the mayor, and the fire chief assert that the policy does not exclude coverage for Dunn's damages for emotional distress. We agree.

The policy contains an exclusion (the employee personal injury exclusion), which states that the policy does not apply:

except with respect to liability of others assumed by the **Insured** under contract, to personal injury to or sickness, disease or death of any employee of the **Insured** arising out of and in the course of his employment by the **Insured**.

The definition of "personal injury" contained in the policy includes "mental anguish, and mental injury." This definition would encompass the emotional distress for which Dunn received an award of damages. The city, the mayor, and the fire chief contend, however, that the definition of "personal injury" contained in the policy does not apply to the employee personal injury exclusion because the term "personal injury" appears in bold face type in the definition, but not when it appears in the employee personal injury exclusion.

We note that in another section of the policy—section IA providing for insurance of the city's property—the policy gives clear significance to the use of bold face type: "Whenever a word appears in **bold** in Section IA of this policy, such word shall be defined as indicated below:". (Bold face in the policy.)

Because there is no similar statement in the liability coverage section of the policy, we might be led to conclude that the use of bold type in this section does not have the same significance as the use of bold type in section IA. On the other hand, we might be led to conclude that the statement in section IA about bold face type indicates its significance in the liability section also.

We also note the following clause appears in seven endorsements to the liability coverage portion of the policy: "The insurance under this endorsement applies to **bodily injury** and **property damage** only and does not apply to any other coverage afforded under the definition of **personal injury.**" This statement clearly indicates that "bodily injury," which is not defined in the policy, is only a facet of **personal injury.** Otherwise, there would be no reason to restrict the application of the endorsements to "bodily injury" and eliminate "any other coverage afforded under the definition of **personal injury.**"

■ The city, the mayor, and the fire chief also point out that if "personal injury" as used in the employee personal injury exclusion is given the meaning ascribed in the definition section of the liability coverage section, there is absolutely no reason for the company to have included the words "sickness, disease or death" in the exclusion because these words are included in the definition of **personal injury.** This persuades us that the meaning of "personal injury" in the exclusion is not intended to be the same as **personal injury,** as defined in the liability coverage portion of the policy. Taking all these circumstances together, we conclude that when a term appears in bold face type in the liability coverage, it has the meaning ascribed to it in the definition section. In other cases where a term that is defined by the policy when appearing in bold face type

appears in another face type, as is the case with "personal injury" in the employee personal injury exclusion, the term is ambiguous because it might be read to be defined as it would be if in bold face type, or it might be read to be defined in the way it is in common usage. Therefore, it "is reasonably subject to conflicting interpretation" and is ambiguous. *Bondy v. Levy,* 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992); *cf. Foster v. Johnstone,* 107 Idaho 61, 66, 685 P.2d 802, 807 (1984) ("To hold that [terms in an insurance policy] are ambiguous merely because they are susceptible of various applications depending upon the particular facts of each situation would be error.").

■ Where there is ambiguity, "the test is what a reasonable person in the position of the insured would have understood the language of the contract to mean." *Foremost Ins. Co. v. Putzier,* 102 Idaho 138, 142, 627 P.2d 317, 321 (1981).

■ We must also consider the meaning of "personal injury" in the employee personal injury exclusion in light of the rule that "[e]xclusionary provisions are to be strictly construed against an insurer." *Rajspic v. Nationwide Mut. Ins. Co.,* 110 Idaho 729, 732, 718 P.2d 1167, 1170 (1986).

■ The city, the mayor, and the fire chief argue that the construction given to the term "personal injury" in the employee personal injury exclusion should be a definition such as that contained in *Black's Law Dictionary* 707 (5th ed. 1979): *"Personal injury.* In a narrow sense, a hurt or damage done to a man's *person,* such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or his reputation." (Emphasis in original.) This meaning, they argue, would eliminate exclusion of Dunn's damages for emotional distress.

We note that in both the edition of *Black's Law Dictionary* cited by the city, the mayor, and the fire chief, as well as in the current edition, (6th ed. 1990), the definition of "personal injury" continues beyond the definition they cite:

The phrase is chiefly used in this connection with actions of tort for negligence and

under worker's compensation statutes. But the term is also used (usually in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights, and in this signification it may include such injuries to the person as libel or slander, criminal conversation, malicious prosecution, false imprisonment, and mental suffering.

*Black's Law Dictionary* 786 (6th ed. 1990). This definition connotes more than merely physical injury. It introduces the notion that "personal injury" may also include injuries that are more intangible, including mental or emotional distress.

We also note the definition of "personal injury" contained in *Webster's Third New International Dictionary* 1686 (1969): "1: an injury affecting one's physical and mental person as contrasted with one causing damage to one's property 2: an injury giving rise to a personal action at law." *Cf.* I.C. § 6–1601(7) (defining terms for statutes concerning "periodic payment of judgments—limitation on certain tort damages and liabilities" as "'Personal injury' means a physical injury, sickness or death suffered by an individual.")

In light of these definitions, we conclude that the term "personal injury" in the employee personal injury exclusion is reasonably subject to conflicting interpretations concerning the inclusion of emotional distress, and is, therefore, ambiguous. We also conclude that construing the exclusion strictly against the company and considering what a reasonable person in the position of the insured would have considered the term to mean, "personal injury" must be construed in the exclusion to mean a physical injury, and not to include emotional distress.

■ Counsel for the company suggested at oral argument that even if coverage for emotional distress is not excluded by the employee personal injury exclusion under the term "personal injury," it would be excluded under the term "sickness." We first note that "sickness" is not defined in the policy and does not appear in bold face type. Therefore, we apply the analysis we have to the term "personal injury," without the need to consider the definition of a term that appears in bold face type.

*Black's Law Dictionary* 1380 (6th ed. 1990) defines "sickness" as:

Illness; disease. An ailment of such a character as to affect the general soundness and health; not a mere temporary indisposition, which does not tend to undermine and weaken the constitution.

This definition leaves us with a question whether "sickness" includes conditions that are only emotional and not physical.

*Webster's Third New International Dictionary* 2111 (1969) defines "sickness" as: "**1a:** the condition of being ill: ill health: **ILLNESS b:** a disordered, weakened, or unsound condition ... **2a:** a form of disease: **MALADY b: MENSES 3a: NAUSEA, QUEASINESS ... b: VOMIT**." This definition likewise leaves us questioning whether it includes emotional distress. One of the definitions of "illness" in the same dictionary is: "an unhealthy condition of the body or mind." *Id.* at 1127. One definition of "disease" in *Webster's* refers to: "disorder or derangement (as of the mind....)." *Id.* at 648. On the other hand, the primary definition of "malady" in *Webster's* is: "a disease, distemper, disorder, or indisposition of the animal body proceeding from impaired or defective functions." *Id.* at 1365. One of the definitions of "distemper" in *Webster's* is: "a disordered or abnormal bodily state usu. of an animal." *Id.* at 658.

We conclude that the term "sickness" is reasonably subject to conflicting interpretations concerning the inclusion of emotional distress, and, therefore, is ambiguous. Construing the employee personal injury exclusion strictly against the company and considering what a reasonable person in the position of the insured would have considered the term to mean, "sickness" must be construed not to include emotional distress.

Therefore, we conclude that the employee personal injury exclusion does not exclude coverage for the damages awarded to Dunn for emotional distress.

## III.

**THE PHRASE, "NEITHER EXPECTED NOR INTENDED FROM THE STANDPOINT OF THE INSURED" CONTAINED IN THE DEFINITION OF THE TERM "OCCURRENCE" IS AMBIGUOUS, AND, THEREFORE, MUST BE CONSTRUED MOST STRONGLY AGAINST THE COMPANY.**

■ The city, the mayor, and the fire chief assert that the term **occurrence** as defined in the policy is ambiguous, and, therefore, must be interpreted in their favor. We conclude that the phrase "neither expected nor intended from the standpoint of the **Insured**" contained in the definition of **occurrence** is ambiguous. Therefore, we construe the term most strongly against the company, and conclude that there was an occurrence that caused the damages which the jury awarded Dunn.

The liability coverage portion of the policy defines **occurrence**, as follows:

> **Occurrence** means an accident, event or error or omission during the policy period, including injurious exposure to conditions, which results in **personal injury, property damage,** or **errors and omissions** neither expected nor intended from the standpoint of the **Insured.**

We question the meaning of the phrase: "neither expected nor intended from the standpoint of the **Insured.**" The ambiguity we see is that this phrase is reasonably subject to different interpretations as it relates to facets of the definitions of **personal injury, property damage,** or **errors and omissions** that refer to conduct that necessarily involves the expectation or intention of the **Insured.** For instance, using the definition of **personal injury** in the policy, false arrest, false imprisonment, malicious prosecution, and assault and battery all refer to conduct, which by its nature requires the intention, and perhaps the expectation, of the perpetrator. Likewise, using the definition of **errors and omissions** in the policy, malfeasance requires the intention, and perhaps the expectation, of the person who is guilty of the malfeasance. ("**Malfeasance.** Evil doing;

ill conduct. The commission of some act which is positively unlawful; . . . ." *Black's Law Dictionary* 956 (6th ed. 1990)).

Reading the phrase "neither expected nor intended from the standpoint of the **Insured**" as referring to these examples of conduct, would severely limit the scope of **occurrence,** and thus the coverage provided by the liability coverage section of the policy.

The company invites us to construe the phrase "neither expected nor intended from the standpoint of the **Insured**" as referring, not to conduct, but to the injury or damage that results from the accident, event or error or omission that comprises the first element of the definition of **occurrence.** Construing the phrase in this fashion would prevent intentional conduct from being an **occurrence** only if any injury or damage resulting from the conduct were expected or intended from the standpoint of the **Insured.**

■ Because of the ambiguity in the meaning of **occurrence,** we construe the definition most strongly against the company. The construction that is most adverse to the company is one that treats conduct that is part of the definition of **personal injury, property damage,** or **errors and omissions** as falling within the definition of **occurrence,** unless the injury or damage resulting from the conduct were expected or intended from the standpoint of the **Insured.**

Therefore, we construe the definition of **occurrence** to read, as follows:

> **Occurrence** means an accident, event or error or omission during the policy period, including injurious exposure to conditions, which results in <u>injury or damage described in the definitions of</u> **personal injury, property damage,** or **errors and omissions** <u>when the injury or damage was</u> neither expected nor intended from the standpoint of the **Insured.**

(Underlined portions added.) Construed in this fashion, the injury or damage resulting from Dunn's demotion in retaliation for his exercise of protected free speech is within the meaning of **occurrence,** unless the injury or damage was expected or intended.

There is no evidence in the record indicating that the fire chief expected or intended to cause Dunn emotional distress. Therefore, Dunn's demotion was an occurrence, that is, an event or error or omission which resulted in injury or damage that was neither expected nor intended.

Because there was an occurrence, the company is obligated to pay all of the damages awarded to Dunn, not just the damages for emotional distress. The liability coverage portion of the policy provides:

> The Company will pay on behalf of the **Insured** for the **ultimate net loss** in excess of the **retention** which the **Insured** shall become legally obligated to pay by reason of liability imposed by law ... for damages because of
>
> Coverage A   **Personal Injury**
>
> . . . .
>
> Coverage C   **Errors and Omissions Liability**
>
> and caused by an **occurrence** during the policy period ...
>
> . . . .

Here the city, the mayor, and the fire chief became legally obligated to pay by reason of liability imposed by law the damages awarded to Dunn, and these damages were caused by an **occurrence**. The fact that some of the damages—the loss of wages—may have been expected or intended is irrelevant. The existence of some injury or damage that was neither expected nor intended is sufficient to satisfy the definition of **occurrence**. This **occurrence** caused the damages awarded to Dunn. Therefore, the company is obligated to pay the judgment.

## V.

### CONCLUSION.

We reverse the trial court's summary judgment declaring that there is no coverage under the policy for the damages awarded to Dunn in the judgment as well as the trial court's denial of the motion for summary judgment of the city, the mayor, and the fire chief. We remand the case to the trial court for entry of summary judgment declaring that the company is required to pay the amount of Dunn's judgment in excess of the retention. We also direct the trial court to consider the award of attorney fees pursuant to I.C. § 41–1839, as requested in the complaint of the city, the mayor, and the fire chief.

We award costs on appeal to the city, the mayor, and the fire chief. No attorney fees were requested on appeal.

McDEVITT, C.J., BISTLINE and SILAK, JJ., and HART, J. Pro Tem., concur.