939 P.2d 570

**NORTH PACIFIC INSURANCE
CO., Plaintiff–Appellant–
Cross Respondent,**

v.

**Leslie MAI, d/b/a Grease Monkey and
Bengal Car Wash, Defendant–
Respondent–Cross Appellant.**

No. 22331.

Supreme Court of Idaho,
Twin Falls, March 1997 Term.

May 23, 1997.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for plaintiff-appellant-cross respondent. William D. Olson, argued, Pocatello.

Ward, Maguire & Bybee, Pocatello, for defendant-respondent-cross appellant. David H. Maguire, argued, Pocatello.

JOHNSON, Justice.

This is a liability insurance case. We conclude that the phrase "sudden and accidental" in an exception to a pollution exclusion provision contained in the insurance policy is not ambiguous.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Leslie Mai (Mai) owns and operates Grease Monkey and Bengal Car Wash (the Grease Monkey), a business in Pocatello, Idaho that changes automobile oil and oil filters. From January 1984 to December 1987, the used oil was pumped from a tank at the Grease Monkey into a truck owned and operated by an employee of Ekotek, Inc. (Ekotek), a hazardous material facility located in Salt Lake City, Utah. Ekotek transported the used oil to its facility for reclaiming or reprocessing.

Mai had a general commercial liability insurance policy (the policy) issued by North Pacific Insurance Co. (North Pacific). The policy contains an exclusion (the exclusion) excluding coverage for bodily injury and property damage arising out of the discharge, dispersal, release or escape of pollutants. The exclusion contains an exception (the exception) stating that the exclusion does not apply if the discharge, dispersal, release, or escape was "sudden and accidental." The policy does not define "sudden and accidental."

The U.S. Environmental Protection Agency (EPA) named Mai as a potentially responsible party (PRP) under the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675, as amended (CERCLA), for response actions taken in connection with the Ekotek superfund site (the site) in Salt Lake City. North Pacific assumed Mai's defense. North Pacific then filed this declaratory judgment action requesting the trial court to declare that North Pacific has no duty to defend or indemnify Mai for any claims arising from the site, in part, because the exclusion applies. North Pacific requested that the trial court grant summary judgment in its favor.

In denying North Pacific summary judgment, the trial court stated that the exclusion should be read to effectuate the intentions of the parties, "i.e., to cover accidental occurrences, including pollution damage, and to exclude occurrences which are expected or intended from the viewpoint of the insured, including releases of pollutants." The trial court concluded that any liability arising out of EPA's action under CERCLA is within the exception because:

(a) the language of the exception, when read with the rest of the insurance contract as a whole, must be interpreted in such a way as to give effect to the intent of the parties, i.e., to exclude pollution caused damages expected or intended by the insured, and to cover accidental occurrences, including damages from pollution; or (b) the "sudden and accidental" language is susceptible to more than one reasonable definition, therefore is ambiguous and must be construed in the manner most favorable to the insured.

North Pacific appealed.

█ A denial of summary judgment by a district judge is not appealable unless the district judge was acting as an appellate court or unless we grant permission to appeal. I.A.R. 11(a)(1) and 12; *Bluestone v. Mathewson*, 103 Idaho 453, 454, 649 P.2d

1209, 1210 (1982). North Pacific did not seek permission to appeal, Mai did not question the appealability of the trial court's denial of summary judgment, and we did not identify the question concerning appealability until after oral argument. Under these circumstances, and because the trial court's decision involves a controlling question of law as to which there is substantial grounds for difference of opinion and because an immediate appeal may materially advance the orderly resolution of the litigation, we will consider and treat this appeal as an appeal by permission under I.A.R. 12. *Kindred v. Amalgamated Sugar Co.,* 118 Idaho 147, 149, 795 P.2d 309, 311 (1990).

In its brief on appeal, North Pacific raises two issues:

(1) whether the trial court incorrectly determined that the potential claims or exposure arising out of the EPA action against Mai are within the exception by declaring that the phrase "sudden and accidental" is ambiguous and by construing it to mean "neither expected nor intended from the standpoint of the insured;" and

(2) whether, if the exception applies, the trial court incorrectly refused to define the scope of North Pacific's duty to defend and/or indemnify Mai from the claims of EPA.

The first of these issues addresses only one of the two alternative rationales for the trial court's denial of summary judgment— the ambiguity of "sudden and accidental" in the exception. North Pacific does not address the trial court's alternative rationale concerning the intent of the parties by citing authorities or arguments in its briefs. Therefore, we will address only the trial court's ambiguity rationale. I.A.R. 35(a)(4); *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 93, 803 P.2d 993, 999 (1991).

## II.

### "SUDDEN AND ACCIDENTAL" IS NOT AMBIGUOUS.

North Pacific asserts that the phrase "sudden and accidental" in the exception is not ambiguous. We agree.

Where language in an insurance policy is clear and unambiguous, "coverage must be determined in accordance with the plain meaning of the words used." *Mutual of Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 235, 912 P.2d 119, 122 (1996). A provision in an insurance policy is ambiguous if it is reasonably subject to conflicting interpretations. *City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 55, 878 P.2d 750, 754 (1994). Words in an insurance policy that have a settled legal meaning are not ambiguous merely because the policy does not contain a definition. *Mutual of Enumclaw v. Wilcox,* 123 Idaho 4, 8, 843 P.2d 154, 158 (1992).

Contrary to Mai's contention, there is no room in this analysis concerning ambiguity for consideration of the intent of the parties or the drafting history of the policy. It is a question of law whether the language at issue is ambiguous.

Mai contends that "sudden and accidental" may mean either (1) an event of limited or short duration, or (2) an unexpected, unforeseen, or unintended event without regard to the time within which the event occurs.

The plain meaning of "sudden" includes reference to an event that happens in a short period of time. "Sudden" is defined as "happening or coming unexpectedly . . . changing angle or character all at once . . . marked by or manifesting abruptness or haste . . . made or brought about in a short time." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1176 (10th ed.1993). It is not reasonable to interpret "sudden" to include an event that occurs over anything other than a short period of time. Therefore, it is not ambiguous.

"Accidental" is a derivative of "accident," which this Court has said has a settled legal meaning in the context of other insurance policies. *See Mutual of Enumclaw v. Wilcox,* 123 Idaho at 8–9, 843 P.2d at 158–9; *State Farm Fire and Casualty Co. v. Doe,* 97.1 ISCR 13 (1997). This meaning is an unintentional happening, an event that is unusual and not expected. *Wilcox,* 123 Idaho at 9, 843 P.2d at 154.

■ The trial court interpreted the exclusion as excluding only those occurrences that are neither expected nor intended from the viewpoint of the insured. Although this may be an appropriate interpretation of "accidental," we conclude it does not create ambiguity in the exception. In *Planet*, the Court ruled that the phrase "neither expected nor intended from the standpoint of the insured" is ambiguous because it does not take into account whether it is referring to conduct or the injury or damage. 126 Idaho at 57–58, 878 P.2d at 756–757. In *Planet*, the phrase was contained in the definition of the word "occurrence." In the present case, we consider the interpretation of "accidental" in the context of the exception, which states: "the discharge, release ... was sudden and accidental." This context dictates that "accidental" refers to conduct rather than to injury or damage. Therefore, "neither expected nor intended" is not ambiguous in the context of this case.

Although we have concluded differently than the trial court did concerning the ambiguity of "sudden and accidental," the record before us is inadequate for us to grant North Pacific summary judgment. North Pacific did not present evidence that established the lack of any genuine issue of material fact concerning whether the discharge, dispersal, release, or escape was "sudden and accidental."

### III.

### CONCLUSION

We affirm the trial court's denial of summary judgment, although on a different basis than the trial court did. We remand the case to the trial court for further proceedings.

Because of this unusual result, we do not award costs on appeal to either party.

Because of our resolution of the ambiguity issue, we do not address North Pacific's request for a definition of the scope of its duty to defend and indemnify Mai.

TROUT, C.J., and SILAK and SCHROEDER, JJ., concur.

MEEHL, Justice Pro Tem, concurring and dissenting.

I concur in the majority's cutting to the chase by treating this appeal as one by permission. I also would affirm the trial court's denial of summary judgment, although on a different basis than that of the trial court. I would find, however, that the CERCLA liability was covered by the policy.

I would first find that while costs incurred in response to equitable remedies, including environmental response costs under CERCLA do constitute "damages because of property damage" (thus creating coverage under the policy), they do not amount themselves to "property damage" as contemplated by the exclusion involved. Thus, we do not even need to decide whether the "sudden and accidental" exception to the exclusion applies. The exclusion as a whole does not apply.

### DISCUSSION

While this court is obviously not bound by the Federal District Court decision in *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 868 F.Supp. 1278 (D.Utah 1994), aff'd. 52 F.3d 1522 (10th Cir.1995), the case provides much guidance because the same Ekotek sight in Utah was involved; the research is so thorough; and the reasoning, as far as it goes, was on solid ground. That case discusses the issue of response and remediation costs under CERCLA and whether they are proper "damages because of property damage." 868 F.Supp. at 1288–1294. In *Quaker State*, the defendant insurers relied on authorities construing "damages" as distinguishing legal claims for monetary damages from costs incurred in response to equitable remedies, including environmental response costs under CERCLA. *Id.* at 1289. They went on to contend that "black letter insurance law holds that claims for equitable relief are not claims for damages under liability insurance contracts;" that generally under Utah law the measure of damages for tortious injury to real property is the difference between the value of the property immediately before the damage and immediately after the injury; and that costs of restoration may not be used as a measure of damage if such

costs exceed the loss of value sustained by the injured party. *Id.* at 1290. These arguments of the insurers were rejected by the court which defined the word "damages" as its "plain, non-technical meaning", which encompassed response costs imposed to remediate environmental damage. The court also said: "To the extent the policies' reference to "damages" is ambiguous, the ambiguity must be resolved in favor of coverage." *Id.* at 1293. This is horn book insurance law. *In accord see Aetna Casualty and Surety Co., Inc. v. Pintlar Corp.,* 948 F.2d 1507 (9th Cir.1991) applying Idaho law.

Moving on to exclusion, that section of the policy does not refer to "damages because of property damage", it simply excludes "property damage arising out of" [pollution]. Unlike the coverage language, this exclusion is ambiguous and must be construed strictly against the insurer. There is no "plain non-technical meaning" for "property damage" that includes costs incurred in response to equitable remedies, including environmental response costs under CERCLA. Since CERCLA was not yet in existence when the policy was created, I would limit the property damage exclusion to a legal claim for damages which for Utah property would mean the loss in property value suffered by the landowner.[1]

It must be pointed out that even if excessive restorative costs were to be considered "property damage", the CERCLA responsive costs herein would not be limited to restorative costs. The actual CERCLA costs at the Ekotek site also include purely preventative activities, e.g., removal of tanks, drums and containers of hazardous waste which has not yet been released or discharged onto the land or into water. The record does not show that the CERCLA costs herein have been apportioned into separate restorative and preventative components.

Based on the reasoning above, I would find that the term "property damage" is ambiguous and that the ambiguity must be resolved to favor the insured. Therefore, "property damage" does not include the CERCLA re-

sponse costs; and the exclusionary clause in question cannot be applied to deny coverage.

As to the extent of coverage herein: (1) I would adept the "injury in fact" trigger to define occurrence [*see Quaker State, supra,* discussion 868 F.Supp. at 1298–1304]; therefore there was an "occurrence" each year that respondent was covered; (2) Under CERCLA, even where its individual role in creating the hazardous site was small, a responsible party may be held jointly and severally liable for the entire cost of response and clean-up at a site if the harm or damage at the site is "indivisible"; therefore (3) liability created by an occurrence created during the policy period becomes oceanic and the entire amount assessed against the respondent is covered under the policy.

Since I would find coverage, I would also find there was a clear duty to defend.

---

1. While "property damage" is defined in the policy, the definition itself is inadequate to resolve the above ambiguity.