# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44889

| | |
|---|---|
| JENNIFER EASTMAN, a single woman, ) | |
| ) | Boise, December 2017 Term |
| Plaintiff-Appellant, ) | |
| ) | Filed: July 30, 2018 |
| v. ) | |
| ) | Karel A. Lehrman, Clerk |
| FARMERS INSURANCE COMPANY, an ) | |
| Idaho corporation, ) | |
| ) | |
| Defendant-Respondent. ) | |
| _____ ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  Hon. Rich Christensen, District Judge.

The district court judgment is <u>vacated</u> and this case is <u>remanded</u> with direction to invalidate the insurance exclusion at issue.  Costs on appeal are <u>awarded</u> to appellant.

Crary, Clark, Domanico & Chuang, P.S., Spokane, WA, attorneys for appellant.  Aaron Crary argued.

Gjording Fouser PLLC, Boise, attorneys for respondent.  Julianne S. Hall argued.

_____

BEVAN, Justice.

This is a dispute regarding underinsured motorist insurance coverage. Appellant, Jennifer Eastman ("Eastman"), filed a complaint, seeking a declaratory judgment that she was entitled to underinsured motorist insurance coverage ("UIM coverage") under her auto insurance policy (the "Policy") with Respondent, Farmers Insurance Company ("Farmers"). The district court granted summary judgment in favor of Farmers, ruling that an exclusion contained in the Policy precluded UIM coverage for Eastman's injuries. Eastman appealed the district court's judgment. We vacated the district court's order granting summary judgment, vacate the judgment of the district court and remand this case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2014, Eastman was involved in a motor vehicle accident while traveling in a van operated by the Spokane Transit Authority ("STA"). Eastman sustained injuries as a result of the accident. Both the at-fault driver and STA held insurance policies. Eastman collected $50,000 from the at-fault driver's insurance policy. Additionally, Eastman collected $48,846 in UIM coverage from STA's insurance policy.

Eastman's special damages from the accident (approximately $209,237.60 in medical expenses, and $8,330.56 in lost wages) exceeded the amount that she collected ($98,846) from the two insurance policies. Accordingly, on April 15, 2016, Eastman filed a claim with her insurer, Farmers, in an attempt to collect her own UIM coverage under the Policy. Specifically, Eastman sought her UIM coverage limit ($500,000) minus the $98,846 that she had already collected from the other insurance policies.

Farmers denied Eastman's claim based on an exclusion within the Policy which eliminated UIM coverage in situations where the insured was riding in another vehicle that had UIM coverage. The portion of the Policy which is relevant to this case is titled "UNDERinsured Motorist Coverage." UIM coverage under this portion is both granted and limited as follows, in pertinent part:

> **Coverage C – 1 UNDERinsured Motorist Coverage**
>
> **. . . .**
>
> We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **UNDERinsured motor vehicle** because of **bodily injury** sustained by the **insured person**.
>
> **Limits of Liability**
>
> a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the lesser of:
>
> 1. The difference between the amount paid in **damages** to the **insured person** by and for any person or organization who may be legally liable for the **bodily injury**, and the limit of UNDERinsured Motorist Coverage; or
>
> 2. The amount of **damages** established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the **bodily injury**.
>
> . . . .

2

**Other Insurance**

. . . .

> 3. *We will not provide insurance for a vehicle other than **your insured car** or **your insured motorcycle**, unless the owner of that vehicle has no other insurance applicable to this part.*

(**Bold** emphasis in original; italics added).

In sum, the Policy provided UIM coverage, but Farmers sought to limit that coverage pursuant to paragraph three in its Other Insurance provision outlined above because the STA van had $50,000 in UIM coverage. For ease of reference this exclusion will be referenced hereinafter as the "non-owned vehicle" exclusion.

On June 21, 2016, Eastman filed a Complaint for Declaratory Judgment. On September 1, 2016, Farmers filed a Motion for Summary Judgment. On September 30, 2016, Eastman filed her own Motion for Summary Judgment. In a memorandum in support of this motion, Eastman argued, among other things,[1] that Farmers' denial of UIM coverage based on the non-owned vehicle exclusion violated Idaho public policy.

On December 1, 2016, the district court issued a Memorandum Decision and Order on the Parties' Cross-Motions for Summary Judgment. The district court granted summary judgment in favor of Farmers, holding in part: 1) The non-owned vehicle exclusion was plain and unambiguous; 2) While riding in a vehicle other than her own, Eastman was only entitled to UIM coverage under the Policy if that vehicle had no UIM coverage; and 3) Eastman was not entitled to UIM coverage under her own Policy because STA had an insurance policy on the van which included UIM coverage. The district court recognized a public policy trend to compensate motorists for their injuries; nevertheless, the court concluded that this trend was not settled enough to invalidate the non-owned vehicle exclusion within the Policy, particularly in light of this Court's holding in *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 65 P.3d 184 (2003) which found the precise clause at issue in this case was enforceable.

On December 14, 2016, Eastman filed a Motion for Reconsideration, which the district court denied on January 31, 2017. On February 3, 2017, the district court issued a Final Judgment. Eastman timely filed a notice of appeal.

---

[1] Eastman also argued below, and before this Court, that the language of the Farmers policy provided coverage for her claims because it was ambiguous. We decline to reach this argument based upon our holding that the non-owned vehicle exclusion violates public policy.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment from a declaratory judgment proceeding, this Court employs the same standard as used by the district court originally ruling on the motion." *Mut. of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 138, 983 P.2d 208, 211 (1999). As such,

> [t]he court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact the movant is entitled to judgment as a matter of law. All disputed facts must be liberally construed in favor of the nonmoving party, and all reasonable inferences from the record must be drawn in favor of the nonmoving party. Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. This Court reviews questions of law *de novo*.

*Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 163 Idaho 455, ___, 414 P.3d 1194, 1197 (2018) (quotations and citations omitted). As noted, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *See Constr. Mgmt. Sys., Inc. v. Assurance Co. of Am.*, 135 Idaho 680, 682, 23 P.3d 142, 144 (2001).

## III. ANALYSIS

This case presents the legal question of whether Idaho's public policy, as identified in *Hill v. American Family Mutual Insurance Co.*, 150 Idaho 619, 249 P.3d 812 (2011), is violated by the non-owned vehicle exclusion in the Policy. We hold that it is. The principles articulated by this Court in *Hill* are equally valid in this case and nullify the non-owned vehicle exclusion which, much like the exhaustion clause in *Hill*, serve "no purpose but to dilute Idahoans' protection against underinsured drivers and to prevent insureds from collecting legitimate claims." *Hill*, 150 Idaho at 630, 249 P.3d at 823.

**A. The public policy considerations explained in *Hill* control this case.**

Whether an insurance contract violates public policy presents a question of law for this Court to resolve. *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). As pronounced by this Court in *Hill*:

> The liberty of contract is not an absolute and unlimited right, but upon the contrary is always subservient to the public welfare. [T]he courts will not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public *in some way*. The usual test applied by courts in

4

determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a *tendency* toward such an evil. Public policy may be found and set forth in the statutes, judicial decisions or the constitution. Whether an insurance contract is against public policy is to be determined from all the facts and circumstances of each case. In addition, analogous cases involving the same general principles may be looked to by the court in arriving at a satisfactory conclusion.

150 Idaho at 623, 249 P.3d at 816 (some emphasis added) (quotations and citations omitted). This analytical framework underpins our decision in this case.

1. The public policy regarding limitations on underinsured motorist coverage has already been clarified by this Court.

This Court's decision in *Hill* analyzed the public policy reflected in the Legislature's amendment of Idaho Code section 41-2502(1) in 2008. *Id*. at 623–25, 249 P.3d 816–18. Section 41-2502(1) requires insurance companies, unless refused by an insured, to provide UIM coverage to compensate an insured against losses for which there would otherwise be inadequate coverage. The public policy footings of this law are two-fold: First, UIM coverage is to protect against "the threat that underinsured motorists pose to public safety," and second, insuring UIM coverage for an insured's claims up to her policy limits avoids the absurd result where "Idahoans injured by a totally uninsured driver [would] sometimes recover more than those injured by underinsured drivers." *Id*. at 624, 249 P.3d at 817.

This Court further explained in *Hill* that benefits from UIM coverage should be "*scrupulously guarded*." *Id*. at 626, 249 P.3d at 819 (emphasis added). One purpose for carefully guarding such benefits is "because 'UIM coverage is intended to provide excess coverage to compensate an insured against losses for which there would otherwise be no coverage.' " *Id*. (quoting *Horace Mann Ins. Co. v. Adkins*, 215 W. Va. 297, 302–03, 599 S.E.2d 720, 725–26 (2004)). Further, Idaho's UIM statute is a remedial one, which must be " 'liberally construed to give effect to the intent of the [L]egislature.' " *Id*. (quoting *State v. Hobby Horse Ranch Tractor & Equip. Co.*, 129 Idaho 565, 567, 929 P.2d 741, 743 (1996); *cf. Abbie Uriguen Oldsmobile Buick, Inc. v. U.S. Fire Ins. Co.*, 95 Idaho 501, 507, 511 P.2d 783, 789 (1973) ("The law is clear in Idaho that insurance policies are to be construed most liberally in favor of recovery.").

Applying these principles from *Hill* to the facts of this case, the threat to public safety from underinsured motorists remains, whether one is riding in her insured vehicle or not. Moreover, our obligation to "scrupulously guard" those benefits requires that we revisit

5

precedent from this Court announced in 2003, years before Idaho's public policy regarding these benefits was made clear. Beyond that, an absurd result would ensue if an insured would recover more from an uninsured motorist than from a driver who carries inadequate insurance. In this case, if the Farmers' non-owned vehicle exclusion were to apply, it is undisputable that Eastman would have been better off to have been injured by an uninsured driver. Her *uninsured* motorist coverage would have provided her up to $500,000 in coverage, whereas her *underinsured* motorist "coverage" provided nothing because she was injured while riding in public transportation that carried nominal limits for a public conveyance. These considerations compel the result that this Court now delineates: a result which would otherwise leave in place the dangers of underinsured motorists and lead to an absurd result that is not in line with *Hill* is disallowed.

  2.  <u>Provisions which harm the public in *some way* are to be struck down</u>.

  Contracts which violate public policy "in some way" should be invalidated. *Hill*, 150 Idaho at 623, 249 P.3d at 816. "[W]henever [an insurance policy] appear[s void] at any stage of the case, it becomes the duty of a court to refuse to enforce it." *Stearns v. Williams*, 72 Idaho 276, 290, 240 P.2d 833, 842 (1952). The exclusion here eviscerates Eastman's underinsured motorist coverage based solely on what vehicle she happened to be riding in when injured. Such a result is clearly harmful "in some way" and is particularly contrary to the policies behind section 41-2502(1). *See Horace Mann*, 215 W. Va. at 303, 599 S.E.2d at 726 ("[U]nderinsurance coverage . . . is in the nature of excess coverage. It is not intended to be liability insurance.") (quoting *Castle v. Williamson*, 192 W. Va 641, 647, 453 S.E. 2d 624, 630 (1994)). This is particularly compelling here, where Eastman was injured while riding in public transportation which had nominal underinsured motor vehicle coverage.

  "Idaho's UIM mandate was designed to protect the public from underinsured motorists, and not merely to govern private relations between parties. The Legislature has required that insurers offer UIM coverage to all motorists. . . ." *Hill*, 150 Idaho at 630, 249 P.3d at 823. Such public policy is thwarted when it can be jettisoned depending simply upon what vehicle an insured happens to be riding in while injured. Thus, Farmers' non-owned vehicle exclusion vitiates Idahoans' protection against underinsured drivers and prevents such insureds from collecting legitimate claims.

6

3. Whether the exclusion clause is antagonistic to the public interest is based on whether the clause has a *tendency* to that end.

The Farmers' non-owned vehicle exclusion is antagonistic to public policy because it has a tendency to injure the public in some way. *Hill*, 150 Idaho at 623, 249 P.3d at 816 (The test to determine if "a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward [injuring the public in some way.]") (quoting *Stearns*, 72 Idaho at 283, 240 P.2d at 837). The word "tendency" means "a direction or course toward a place, object, effect, or result." Webster's Third International Dictionary 2354 (Unabridged 3d ed. 1969). The exclusion which Farmers seeks to enforce has a *tendency* to annul the very underinsured motorist coverage which Eastman purchased. Such a *tendency* makes the exclusion void.

Idaho law requires that insurance companies offer UIM coverage with at least the minimum limits required by Idaho Code section 49-117 in all Idaho auto insurance policies. I.C. § 41-2502(1). That statutory limit is only $25,000. But here, Eastman sought and purchased twenty times more coverage than the minimum—in the amount of $500,000. She bought and paid for insurance to cover significant injuries like those she suffered in this case. To say that the exclusion must be enforced simply because it is unambiguous violates the very public policy articulated in *Hill*. Eastman paid an *additional* premium to obtain *additional* UIM coverage. She paid more than required for minimum limits coverage to protect against a scenario just like the one before the Court. Underinsured motorist coverage is specifically designed to compensate the insured when the tortfeasor's coverage does not provide sufficient compensation to the insured victim. To repeat, this time with emphasis: "The Legislature clearly enacted the UIM amendments *to protect the citizens of this State from being undercompensated for their injuries. . . ." *Hill*, 150 Idaho at 627, 249 P.3d at 820.

The dissent references "heartbreaking situations" like the one before the Court that cannot be protected-against and that "motorists will inevitably suffer serious injuries for which they are undercompensated." While that result is likely true in cases where tortfeasors have minimal limits and motorists have no UIM coverage or little UIM coverage, it is not a result the law should tolerate when the injured person has purchased substantial UIM coverage but has the misfortune of being injured while riding in a public van. The sad reality is that Eastman would have been better off if STA had no UIM coverage. Such a result is contrary to the policy of

7

"protect[ing] the citizens of this State from being undercompensated. . . ." *Id*. In cases like this one, where Eastman purchased significant UIM coverage, she should not be blatantly undercompensated when Idaho's public policy is to the contrary.

Enforcing the non-owned vehicle exclusion " 'would [have a *tendency* to] emasculate the endorsement's intended effect . . . to provide coverage over and above the limits of the tortfeasor's insurance.' " *Id*. at 626, 249 P.3d at 819 (quoting *Colonial Penn Ins. Co. v. Salti*, 84 A.D.2d 350, 446 N.Y.S.2d 77, 79 (N.Y. App. Div. 1982)). Thus, the exclusion's tendency to undermine the very purpose behind UIM coverage makes it void as against public policy.

4. <u>Analogous cases involving the same general principles support a finding that the non-owned vehicle exclusion violates public policy.</u>

Our holding is consistent with the conclusions of other jurisdictions that have struck down Farmers' non-owned vehicle exclusion on grounds of public policy. *See*, *e.g.*, *Kline v. Farmers Ins. Exch.*, 277 Neb. 874, 766 N.W.2d 118 (2009); *Illinois Farmers Ins. Co. v. Cisco*, 178 Ill. 2d 386, 687 N.E.2d 807 (1997); *Estate of Sinn by Sinn v. Mid-Century Ins. Co.*, 288 Ill. App. 3d 193, 679 N.E.2d 870 (1997); *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845 (Iowa 1990).

In *Veach v. Farmers Ins. Co.*, for example, the Iowa Supreme Court analyzed an exclusion nearly identical to the non-owned vehicle exclusion in this case, which made UIM coverage dependent on the vehicle rather than the injuries suffered by the insured. The *Veach* court observed that an insured often does not have any control over the insurance coverage of the vehicle in which she is riding, meaning "the insured's underinsured motorist coverage may change each time the insured enters a different vehicle." 460 N.W.2d at 847. Like we recognized in *Hill*, the *Veach* court also noted that when non-owned vehicle exclusions are enforced, "the insureds are often better covered in a vehicle with no underinsured motorist coverage than in one with the statutory minimum." *Id.* at 848.

If Farmers' non-owned vehicle exclusion were enforced, then we would uphold an additional absurd result where Eastman's coverage changed because she rode in a public conveyance which carried total UIM limits just over 10% of the amount she contracted for in her own efforts to insure against just this kind of risk. Her damages clearly eclipsed the amount of insurance available to her, but her coverage for such *under*insurance would be worthless because she was not in her own car when she was injured. Taken to its extreme, if she were riding in a friend's vehicle with minimum limits coverage when injured, her underinsurance would be

8

entirely obliterated. Thus, "enforcement of the 'not-owned-but-insured' clause would frustrate the purpose of underinsured motorist coverage." *Id*. at 848.

Likewise, in *Kline v. Farmers Insurance Exchange*, the Nebraska[2] Supreme Court held that a Farmers' exclusion denying UIM coverage when a person is injured while occupying a vehicle she does not own was void as against public policy. The court stated:

> As written, the not-owned-but-insured exclusion would prevent a victim from recovering UIM benefits even in a situation where the victim has only received UIM benefits in the minimum amount of $25,000. And, under the exclusion an insured would be more adequately protected from tort-feasors in a vehicle with no UIM coverage. This is clearly not what the Legislature intended when it enacted the [Underinsured Motorist Coverage Act].

277 Neb. at 882, 766 N.W.2d at 125. This Court's holding in *Hill* established that Idaho's public policy is consistent with that of Iowa and Nebraska. Enforcing exclusions, which provide coverage if an insured is injured by an uninsured driver, but not if injured by an underinsured motorist while riding in a non-owned vehicle, would allow insurance companies to eviscerate the purpose of such coverage. Such results plainly violate public policy.

These analogous cases reach the same result that we reach today. Each court applied public policy principles already articulated by this Court; each reached the same conclusion—the exclusion clause at issue here violates Idaho's public policy.

**B.** *Purdy v. Farmers Insurance* **does not control the outcome of this case.**

In referencing the analogous cases set forth above this Court recognizes that *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 65 P.3d 184 (2003) merits review. However, *Purdy's* holding was reached before Idaho's public policy regarding UIM coverage was established by the Legislature, and its holding is therefore no longer sustainable. *Cf. Western Home Transp., Inc. v. Idaho Dep't of Labor*, 155 Idaho 950, 953, 318 P.3d 940, 943 (2014) ("While we are cognizant of the importance stare decisis plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case has proven over time to be unjust or unwise.").

---

[2] Farmers rightly points out that Nebraska and Illinois have legislation mandating that UIM coverage be included in auto policies issued in those states. Idaho likewise mandates such coverage. *See Hill*, 150 Idaho at 630, 249 P.3d at 823 (stating the Legislature's "UIM *mandate* was designed to protect the public. . . .") (Emphasis added). The fact that Idaho drivers can opt out of UIM coverage does not change the Legislature's mandate as recognized in *Hill*.

The *Purdy* Court found that because the non-owned vehicle exclusion present here was not ambiguous, it was therefore enforceable. Whether Farmers' non-owned vehicle exclusion is ambiguous is not relevant to our public policy analysis here. The question before this Court is whether enforcing the exclusion, however clearly worded it may be, violates Idaho's public policy. This Court did not address that question when it decided *Purdy* at a time well before Idaho's underinsured motorist statute was amended. *Purdy's* holding is limited to the law as it existed in 2003.

> We have recognized:
>
> The court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined *in light of modern reality* and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.
>
> Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.

*Salinas v. Vierstra*, 107 Idaho 984, 990, 695 P.2d 369, 375 (1985) (quoting *Smith v. State*, 93 Idaho 795, 801, 473 P.2d 937, 943 (1970)) (emphasis added).

The precedential value of *Purdy* must be questioned in "light of [the] modern reality" that underinsured motorist coverage is now mandated for Idaho's driving public. In *Hill*, we recognized the dynamic nature of public policy: "Public policy is not static, but may change as the relevant factual situation and the thinking of the times change." 150 Idaho at 629, 249 P.3d at 822. The public policy of this State clearly changed after *Purdy* as evidenced by the Legislature's decision to pass mandatory UIM coverage in Idaho Code section 41-2502(1). The dissent attempts to weaken the *Hill* holding, indicating that the Legislature's amendment to Idaho Code section 41-2502(1) was not a "mandate" because insureds can refuse such coverage. *See* I.C. § 41-2502(2). A "mandate" is a "command, order or direction. . . ." Black's Law Dictionary 962 (6th ed. 1990). The Legislature has clearly directed that underinsurance be offered to all of Idaho's drivers, which is a mandate.

Indeed, the dissent recognizes that the exclusion at issue *does* violate a public policy decree set forth in *Hill*, but then disregards *Hill's* clearly established precedent by citing to the refrain of the need to avoid "improper judicial legislation." By curtailing *Hill's* manifest

10

pronouncement on public policy in this case, the dissent ignores the Court's *duty* to refuse to enforce contract provisions which violate public policy. *See Quiring*, 130 Idaho at 567, 944 P.2d at 702 (quoting *Stearns*, 72 Idaho at 290, 240 P.2d at 842).

Again, public policy is not static, and relying upon the *Purdy* case, decided nearly a decade before this Court clearly outlined the public policy that "UIM amendments [must] protect the citizens of this State from being undercompensated for their injuries," simply hides behind yesterday's logic and fails to protect those of our citizens who have purchased underinsurance coverage to protect against the type of harm Eastman suffered here.

## IV. CONCLUSION

We vacate the district court's judgment and remand this case with the direction to invalidate the insurance exclusion at issue. In so doing, we do not award attorney's fees to either party, as this case clarifies existing law and was certainly not brought frivolously or without foundation under Idaho Code section 12-121. Pursuant to Idaho Appellate Rule 40, Eastman is granted her costs on appeal as the prevailing party.

Chief Justice BURDICK and Justice BRODY, CONCUR.

JONES, Justice, dissenting.

## A.     The Policy does not violate public policy.

I feel compelled to dissent in this case because I am convinced that there is no public policy in Idaho favoring required underinsured motorist ("UIM") coverage. The primary case upon which the majority relies, *Hill v. American Family Mutual Insurance Co.*, 150 Idaho 619, 249 P.3d 812 (2011), was a contentious decision as evidenced by the three-two split. In *Hill*, this Court analyzed whether exhaustion clauses in UIM insurance contracts violate Idaho public policy. *Id.* The exhaustion clause at issue created a condition precedent to UIM benefits, "entitling Hill to coverage only if she settle[d] or receive[d] a payment for the tortfeasor's policy limits." *Id.* at 623, 249 P.3d at 815. Ms. Hill settled for $1,000 less than the at-fault driver's insurance policy limit; thus, Ms. Hill's insurer relied on the exhaustion clause to deny Ms. Hill UIM coverage. *Id.* at 621, 249 P.3d at 814. In authoring the majority of *Hill*, I concentrated on the exhaustion clause and concluded that it did not make sense to require a claimant to exhaust the last $1,000 of a policy in order to qualify for UIM coverage. Unfortunately, Ms. Hill's public policy argument was not given as much weight in reaching this decision. In revisiting the

question of the public policy of UIM coverage, I am now convinced that there is no, and never has been, public policy favoring required UIM coverage.

The plain language of Idaho Code section 41-2502 makes it clear that UIM coverage is not required by the statute. Further, there is no provision in the statute that sets forth the scope, application, or requirement of UIM coverage. It is clear, therefore, that there is no "mandate" for UIM coverage. The dissent in *Hill* correctly identified this point, setting forth "[t]he 2008 amendment merely requires insurance companies to offer [UIM] coverage in their motor vehicle liability policies. It does not in any way purport to address the procedures for making a claim under such coverage." *Id*. at 632, 249 P.3d at 825 (Eismann, J., dissenting).

Additionally, "Idaho Code [section 41–2502(1)] requires that insurers offer uninsured and underinsured coverage in their motor vehicle liability insurance policies '*under provisions approved by the director of the department of insurance*, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.'" *Id*. at 632, 249 P.3d at 825. (Emphasis in original.) "The public policy declared by statute is that the director of the Department of Insurance, not this Court, has the authority to determine whether provisions of an insurance policy that do not conflict with any express statutory requirement are consistent with public policy. There was a time when this Court correctly refused to usurp the authority granted by the legislature to the director." *Id*.

In *Hansen v. State Farm Mutual Automobile Insurance Company*, 112 Idaho 663, 735 P.2d 974 (1987), this Court similarly recognized "[t]he Director of the Department of Insurance is the person entrusted by the legislature to determine whether or not given policies comport with the public interest. Policies approved by the Director are thus presumed to be in harmony with public policy. In the absence of proof that a policy contains provisions which conflict with express legislative directives, the Director's approval of an insurance policy form is an administrative determination that the policy form is in the 'public interest.'" *Id*. at 667–68, 735 P.2d 974, 978–79. Accordingly, "[p]olicies that are approved by the Director of the Department of Insurance are presumed to be in accordance with public policy. Absent an assertion to the contrary, this Court assumes the policy was submitted to and approved by the Director." *Hill*, 150 Idaho at 634, 249 P.3d at 827 (Eismann, J., dissenting) (citing *American Foreign Ins. Co. v. Reichart*, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004)). Applying these principles to the present

12

case, it is clear that the majority has impermissibly stepped into the role of the Director by invalidating Ms. Eastman's insurance exclusion on the premise that it violates Idaho public policy.

Absent compelling public policy, the plain and unambiguous language of an insurance contract should be enforced. In *Blackburn v. State Farm Mutual Automobile Insurance Company*, two cars, containing the members of the Blackburn and Day families, were stopped in a highway emergency lane when a car driven by Mr. Ellsworth struck them. 108 Idaho 85, 697 P.2d 425 (1985). Mr. Blackburn's wife and one of his children were killed and two of his other children were injured. *Id.* One member of the Day family was killed and others were injured. *Id.* Mr. Ellsworth held an insurance policy that was limited at $20,000 per occurrence. *Id.* Mr. Blackburn sued Mr. Ellsworth and recovered $150,000. *Id.* at 86, 697 P.2d at 426. Mr. Blackburn and Mr. Day also received $10,000 each from Mr. Ellsworth's insurance policy. *Id.* Mr. Blackburn held his own insurance policy, which contained UIM protection of $30,000 per occurrence. *Id.* Mr. Blackburn made a claim on this policy, which was denied. *Id.* Thereafter, Mr. Blackburn initiated a lawsuit against his insurer arguing that Mr. Ellsworth should be considered an uninsured motorist because his insurance policy was insufficient to cover Mr. Blackburn's damages. *Id.* This Court stated:

> We find nothing to indicate any legislative intent that the term "uninsured" should be construed to mean "underinsured" as asserted by the appellant here. To the contrary, the plain meaning of the statutes would appear to militate against the argument of Blackburn since the tortfeasor Ellsworth was covered with statutorily sufficient insurance, was thus "insured" rather than "uninsured."

*Id.* at 87, 697 P.2d at 427. After announcing its holding, this Court acknowledged the anomaly, noting that "a holder of a policy containing uninsured motorist coverage may well be in a better position if a tortfeasor carries no insurance whatsoever rather than carrying the minimum coverage mandated by the statute." *Id.* at 90, 697 P.2d at 430. However, this Court refused to "indulge in judicial legislation" and instead noted that such policy decisions should be made by the legislature upon adequate information because the legislature is the proper body "equipped and authorized to make such policy decisions." *Id.*

Another occasion to review the public policy relating to UIM coverage arose in *Purdy v. Farmers Insurance Company of Idaho*, when Ms. Purdy was injured while riding in someone else's car. 138 Idaho 443, 445, 65 P.3d 184, 186 (2003). Ms. Purdy collected the liability

13

insurance policy limit from the at-fault driver's policy, and UIM coverage from the driver of the car in which she was a passenger, but the total amount that she collected was insufficient to cover her damages. *Id.* Accordingly, she filed a claim with Farmers to collect under the UIM coverage section of her policy. *Id.* Ms. Purdy's policy contained an Other Insurance provision that was identical to the Other Insurance provision at issue in this case. *Id.* This Court held that the Other Insurance provision was unambiguous and UIM coverage did not apply because the insurance policy of the driver of the car in which Ms. Purdy was a passenger provided UIM coverage. *Id.* at 448, 65 P.3d at 189.

The majority now claims "the public policy of this State clearly changed after *Purdy* as evidenced by the Legislature's decision to pass mandatory UIM coverage in Idaho Code section 41-2502(1)." However, as stated previously, the Legislature amended Idaho Code section 41-2502(1) in 2008 to expressly require that insurance companies *offer* UIM coverage. The best example that there is no public policy for UIM coverage is the fact that the statute clearly makes the coverage optional. If the Legislature intended to make UIM coverage a matter of public policy, it surely would have made UIM coverage mandatory. It can hardly be said that a voluntary choice of UIM coverage can be considered public policy. This is a point on which the public policy enunciated by this Court in *Hill* must be clarified. At one point in *Hill*, this Court referred to the 2008 Amendment as a "UIM mandate." *Hill*, 150 Idaho at 624, 249 P.3d at 817. However, as set forth above, the 2008 Amendment did not mandate UIM coverage. Indeed, in *Hill* this Court later clarified that the 2008 Amendment "mandat[es] insurers to at least offer UIM coverage in all insurance policies." *Id*.

Absent the majority's improper judicial legislation, *Purdy* remains good law. In *Purdy*, this Court upheld an Other Insurance provision that was identical to the clause at issue here. 138 Idaho at 451, 65 P.3d at 192. We should remember that we are dealing with automobile insurance. This is not health and accident or general casualty insurance. The statutes at issue in this case pertain to an automobile insurance policy purchased by Ms. Eastman. It is reasonable for the policy to limit recovery to injuries sustained while being in her own, insured car. To hold otherwise would open the door to automobile insurance applying to a wide range of situations not accounted for within the policy. Hypothetically, what if Ms. Eastman was walking to work and had been hit by an automobile while crossing the street. Would the majority think that she is

14

covered by the UIM provision in her policy? Indeed, they make the argument that it was irrelevant Ms. Eastman was in someone else's car.

The district court found that this Court affixed public policy to the 2008 Amendment, but it has left uncertainty as to the limit, scope and breadth of that public policy. I agree. It is too uncertain to stretch such public policy to mandate that an insurer provide coverage for injuries occurring in a vehicle not covered in the parties' agreement when the vehicle that the plaintiff was hit with, and the vehicle plaintiff was hit in, both provided coverage. Although Ms. Eastman had the foresight to purchase $500,000 limits of UIM coverage, Farmers only offered and contracted to pay that limit under the requirement that she be injured in her own automobile, either as the driver or a passenger. Nothing in section 41-2502 prohibits that arrangement. Ms. Eastman is presumed to know the provisions of her coverage. She made the decision to occupy another car that was not insured by the UIM coverage which she purchased from Farmers. The unequivocal language of the Policy issued to Ms. Eastman controls the outcome in this case, and the $500,000 limit of her UIM Policy issued by Farmers is simply not involved.

While the 2008 Amendment is certainly a step in the right direction to protect Idaho motorists from the threat of underinsured motorists, it is far from an assurance that all Idaho motorists will be fully compensated for their injuries. The majority relies on *Hill* to claim that "the Legislature clearly enacted the UIM amendments t*o protect the citizens of this State from being undercompensated for their injuries. . . .*" However, even if the 2008 Amendment was a broad UIM/UM mandate, the problem of undercompensated, injured motorists would persist because some injuries would inevitably exceed the coverage limit. The clear language of section 41-2502 does not require any minimum UIM coverage except the statutory requirement of section 49-117, which is the same minimum coverage for any automobile insurance policies issued in Idaho, i.e., $25,000 liability coverage. I think most people would agree that requiring a minimum of $25,000 of liability insurance in Idaho essentially renders all persons insured in Idaho underinsured persons. They would certainly be underinsured for any accident producing serious, physical injuries. It seems questionable why, if the UIM coverage is considered mandatory, or a matter of public policy, that the Legislature would require no more coverage from anybody operating a car in Idaho than $25,000 liability coverage and optional UIM coverage of another $25,000.

15

Notably, the 2008 Amendment did not prohibit the limiting of UIM coverage in certain circumstances. While Ms. Eastman would have been better off if STA was uninsured rather than underinsured, the Policy language should not be ignored merely because STA's UIM limit was insufficient to meet Ms. Eastman's damages. This issue should be resolved by the legislature and, in the meantime, the clear and precise language of the Policy should be enforced. I would hold that the district court did not err by holding that the Policy's limitation of UIM coverage did not violate public policy. As concluded by Justice Eismann in the dissent in *Hill*, "in *Blackburn*, *Hammon*, and *Hansen*, this Court understood its proper role and had the rectitude to refrain from usurping the authority of the legislature and the director of the Department of Insurance. We should follow that example." *Hill*, 150 Idaho at 636, 249 P.3d at 829 (Eismann, J., dissenting). The bottom line is that insurance is a form of risk management, not risk elimination. Unfortunately, as long as cars are driven, car accidents will occur and motorists will inevitably suffer serious injuries for which they are undercompensated. There is no way to eliminate this risk; thus, heartbreaking situations, such as the one at hand, will continue to occur.

**B.      Further, the district court did not err by holding that Ms. Eastman was not entitled to UIM coverage according to the Policy language.**

While not fully addressed by the majority, Ms. Eastman also raises an argument that the district court erred by holding that she was not entitled to UIM coverage under the Policy language. Ms. Eastman advances three main claims to support her argument. First, she claims that Farmers' position—that the Other Insurance provision limits UIM coverage—is contrary to the Disclosure Statement, which described her UIM coverage as "offset" by any other UIM coverage, rather than precluded by any other UIM coverage. Second, Ms. Eastman claims that the Disclosure Statement must be incorporated into the Policy. Third, Ms. Eastman claims that she is entitled to the UIM coverage because Farmers' attempt to limit the UIM coverage was not done with "clear and precise" language.

> Where language in an insurance policy is clear and unambiguous, "coverage must be determined in accordance with the plain meaning of the words used." *Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996). A provision in an insurance policy is ambiguous if it is reasonably subject to conflicting interpretations. *City of Boise v. Planet Ins. Co.*, 126 Idaho 51, 55, 878 P.2d 750, 754 (1994). Words in an insurance policy that have a settled legal meaning are not ambiguous merely because the policy does

16

not contain a definition. *Mutual of Enumclaw v. Wilcox,* 123 Idaho 4, 8, 843 P.2d 154, 158 (1992).

*North Pac. Ins. Co. v. Mai*, 130 Idaho 251, 253, 939 P.2d 570, 572 (1997).

Ms. Eastman's first claim is unpersuasive because the Other Insurance provision is not contrary to the Disclosure Statement. The Disclosure Statement complies with Idaho Code section 41-2502 by explaining what the law requires and the types of UIM coverage that may be offered to insureds. Further, the Disclosure Statement essentially refers to the Other Insurance provision by highlighting the fact that UIM coverage may be limited in certain circumstances: "**All auto liability insurance policies that include . . . UIM coverage have other terms and conditions that may affect or limit the availability of . . . coverage**." (Emphasis in original). Thus, the Other Insurance provision is not contrary to the Disclosure Statement.

Ms. Eastman's second argument is unpersuasive because it ignores that the Disclosure Statement included the following language: "**This general explanation is NOT an insurance agreement. All auto liability insurance policies that include UM and/or UIM coverage have other terms and conditions that may affect or limit the available of either coverage. For a more detailed explanation of these coverages, refer to your policy.**" (Emphasis in original). Ms. Eastman's argument—that the Disclosure Statement should be incorporated into the Policy—is untenable considering that the Disclosure Statement states "**This general explanation is NOT an insurance agreement.**" (Emphasis in original). The Policy does not provide illusory coverage because the Policy's UIM Coverage section would apply if STA's policy did not provide UIM coverage. *See National Union Fire Ins. Co of Pittsburgh, P.A. v. Dixon*, 141 Idaho 537, 542, 112 P.3d 825, 830 (2005) (Insurance coverage is not illusory if it "affords realistic protection of any group or class of injured persons.").

Third, Ms. Eastman's argument that Farmers' attempt to limit UIM coverage was not done with "clear and precise" language is unpersuasive, especially considering this Court's holding in *Purdy*, where an clause that is identical to the one at issue here was analyzed and held to have "unambiguously provide[d] that there is no coverage." 138 Idaho 443, 451, 65 P.3d 184, 192. In sum, the district court did not err by holding that Ms. Eastman was not entitled to collect UIM benefits under the Policy.

## C. Farmers is entitled to attorney fees on appeal.

I would also award Farmers attorney fees on appeal under Idaho Code section 12-121.

This Court has awarded attorney fees on appeal under Idaho Code section 12-121 when an appellant merely invited this Court to second guess the trial court. *Crowley v. Critchfield*, 145 Idaho 509, 514, 181 P.3d 435, 440 (2007). Here, Farmers is entitled to attorney fees on appeal because the district court authored a thorough and well-reasoned decision that was supported by law, and Ms. Eastman's appeal merely invited this Court to second guess the district court.

Justice HORTON CONCURS in dissent as to Parts A and B ONLY.